UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| JASON ADAMS, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Case No.  6:13-cv-01681-HGD |
| ) | |
| CAROLYN COLVIN, ) | |
| COMMISSIONER, SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | |
| ) | |
| Defendant ) | |

## MEMORANDUM OPINION

The parties have filed written consent and this action has been assigned to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73.  (*See* Doc. 13). Plaintiff, Jason Adams, filed an application for disability benefits on July 6, 2010. He also filed a Title XVI application for supplemental security income that same date. These claims were initially denied on October 19, 2010.  Mr. Adams filed a request for a hearing before an Administrative Law Judge (ALJ).  He appeared and testified at a hearing on November 17, 2011.  Supplemental hearings were also held on March

21 and July 6, 2012.  Plaintiff was represented by attorney Don Bevill in these proceedings.

On August 10, 2012, the ALJ issued an unfavorable decision finding plaintiff was not entitled to disability benefits.  Plaintiff requested further review by the Appeals Council.  The Appeals Counsel denied plaintiff's request for review on August 27, 2013.  This case is now ripe for review under 42 U.S.C. §§ 405(g) and 1383(c)(3).  Upon consideration of the administrative record and the memoranda of the parties, the court finds that the decision of the Commissioner is due to be affirmed and this action dismissed.

## I.   ALJ Decision

Disability under the Act is determined under a five-step test.  20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  "Substantial work activity" is work that involves doing significant physical or mental activities.  20 C.F.R. § 404.1572(a).  "Gainful work activity" is work that is done for pay or profit.  20 C.F.R. § 404.1520(b).  Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii).  Absent such impairment, the claimant may not claim disability.

*Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ first must determine the claimant's residual functional capacity (RFC), which refers to the claimant's ability to work despite his impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work, 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds that the claimant is unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence in significant numbers of jobs in the national economy that the claimant

can do given the RFC, age, education and work experience. 20 C.F.R. §§ 404.1520(g) and 404.1560(c).

At the time of the ALJ's decision, plaintiff was 32 years old. (Tr. 259, 263). He has a high school education and past relevant work as a logger, construction laborer and landscape laborer. (Tr. 20, 45, 271-74, 295-97). He alleges the onset date of his disability to have been September 1, 2009. (Tr. 259, 263). Plaintiff is 6' tall and weighs 263 pounds.

The ALJ found that plaintiff has the severe impairments of bipolar I disorder, opioid dependence with recurrent abuse, and degenerative disc disease of the lumbar spine. (Tr. 11). He also has a number of non-severe impairments. (Tr. 11-14).

The ALJ also found that plaintiff did not suffer from certain impairments that he claimed. For instance, plaintiff alleged that he had considerable limitations associated with congestive heart failure that he alleges he was diagnosed in 2008. However, at his September 2010 claims-related consultative examination, he admitted to the examiner, Dr. Samia Moizauddin, M.D., that he has had numerous cardiac evaluations, including cardiac catheterization, and that all results had been normal. (Ex. 5F).

Plaintiff also alleged that he suffers from severe headaches. In October 2011, he saw Dr. Lorn Miller, M.D., a neurology consultant, for evaluation of severe

headaches with associated photophobia, phonophobis, osmophobia, nausea and vomiting. (Ex. 13F). He told Dr. Miller that he had headaches with photophobia and phonophobia as a teenager but that they occurred infrequently and were relieved with Tylenol until age 21 when a tree fell on his head (in late 2000 or 2001). He reported that he had been having headaches three to four times a week since the head injury with no change in severity or frequency and that only Lortab was of any help.

 The ALJ found that there was no evidence in plaintiff's medical records to support those reports. The ALJ noted that plaintiff did not report a history of migraines or severe headaches when he saw Dr. Moizuddin in September 2010. (Ex. 5F). Also, the ALJ stated that plaintiff has been seeing his primary care physician, Dr. Brasfield, once a month on average, since April 2007, and has consistently denied headaches at those visits. Furthermore, the medical history of plaintiff as documented by his primary care physician's records do not include migraine headaches.

 Plaintiff also reported to having seizures since a head injury he suffered in 1998, 2000 or 2001, in either, depending upon the account, a logging accident or a motor vehicle accident. At his October 2011 neurology evaluation, plaintiff told Dr. Miller that he began having seizures a short time after he sustained a severe head injury from the falling trees. He also told Dr. Miller that he had three or four seizures per year with the last one occurring in August 2011. However, in a report to

emergency room personnel in July 2010, plaintiff stated that he had not had a seizure since 2003. However, his testimony in this case is that he is currently suffering two grand mal seizures a month. (Tr. 13). Furthermore, he advised Dr. Miller that he was given Depakote for the seizures when they began, that he has taken the same 125 mg. dosage, that this medicine manages the seizures well, and that he did not want any other seizure medications. (Tr. 13).

Dr. Brasfield's records reflect no reported history of seizure disorder and no reports of seizure activity. Despite his claim of having been on Dekapote for over five years, records reflect that plaintiff was not prescribed Dekapote until October 10, 2010, just ten days before he saw Dr. Miller. His psychiatrist, Dr. Armand Schachter, M.D., prescribed the medication to plaintiff in answer to plaintiff's complaints of increased bipolar symptoms, not for seizures. The ALJ concluded that the record evidence failed to establish this as a medically determinable seizure disorder. (Tr. 13).

At the hearing, plaintiff also claimed that he was being treated for schizophrenia. The ALJ found that the record evidence also failed to support this claim. The ALJ noted that plaintiff has been treated at the Northwest Alabama Mental Health Center off and on since 2003 and that those records reflect no diagnosis of schizophrenia. Likewise, plaintiff has been evaluated by a number of

other mental health professionals outside the Mental Health Center, and there is no evidence that any of the examiners has observed any signs suggestive of schizophrenia. Consequently, the ALJ found that the evidence failed to establish the medically determinable impairment of schizophrenia. (Tr. 14).

While plaintiff attributes his alleged mental and physical disability to head and back injuries, he has given inconsistent accounts regarding the injuries themselves as well as how they occurred. According to the ALJ, the record evidence reflects that plaintiff reported 1998, 2000 and 2001 as the year he sustained the injuries. However, there is no reference to the incident(s) or injuries until July 2008 when he was admitted to the hospital after overusing methadone, Lortab and Panax. (Exs. 17F and 30F). Plaintiff told Kaycia Vansickle, M.D., that he had sustained a head injury, multiple spinal and spinal cord injuries, and injuries to his hand, back and right knee in a 1998 motor vehicle accident and had undergone multiple surgeries, including a craniotomy. He presented in a wheelchair and reported that he had experienced difficulty ambulating without assistance because of the accident.

Previously, when plaintiff saw Muhammad Ali, M.D., a neurologist, in June 2007, he reported no specific precipitating event for his pain and reported having had only hand and right leg surgery. (Ex. 4F). Later, when admitted to Brookwood Hospital's Psychiatric floor in April 2010, plaintiff reported chronic pain from a 2001

"crush" injury that required back, knee, hand and skull surgery and a 30-day hospital stay, but he reported the injuries occurred when a tree fell on him while he was logging. (Ex. 1F). At his September 2010 consultative physical examination, plaintiff reported that his back had been broken and the back of his skull crushed in 2001 when he was crushed between two trees and had subsequently had surgery on his back and his right knee. (Ex. 5F).

In addition, plaintiff told Dr. Jerry Gragg, Psy.D., that he had suffered a broken back, a head injury, and a crushed right arm in a logging accident several years earlier and had surgery on his back and knee. (Ex. 6F). He told Dr. Miller that he had suffered severe injuries to his head, neck, back and right knee in 2000 when a tree fell on his head while he was logging and that he had been hospitalized for 90 days. (Ex. 13F). He reported his other pertinent medical history as a left ACL repair, a fractured right ankle, and a fractured left hand–all in the 1990s and the result of football injuries.

Records from Dr. Brasfield, plaintiff's primary care physician since 2007, include no references to back, head, neck or knee injuries until the July 2008 hospitalization. (Exs. 16F-18F). Thereafter, his notes reference the 1998 motor vehicle accident as the causative factor for plaintiff's pain, but there is no mention of any logging accident in his treatment notes. Dr. Brasfield also adopted plaintiff's

account of having had back surgery–specifically, a laminectomy–following the accident; however, objective tests show no evidence of surgery. In fact, those tests reveal little evidence of a back impairment at all.

A February 2009 lumbar spine MRI showed degenerative disc disease and multilevel disc bulges, worse at L5-Sl, but no significant central canal narrowing. (Ex. 18F at 13). A July 2009 lumbar spine CT revealed no traumatic osseous abnormality and found a widely patent canal, normal disc space and vertebral body height throughout, and no malalignment. (Ex. 33F). Lumbar spine x-rays taken in October 2010 were normal aside from mild chronic wedging in the thoracolumbar junction and a mild rotary scoliotic deformity of the upper lumbar spine. (Ex. 7F). A February 2012 lumbar spine MRI revealed only mild multi-level degenerative disc disease. (Ex. 22F).

According to the ALJ, examinations support plaintiff's allegations of a back impairment but not the severe debility he alleges. Dr. Moizuddin's examination was remarkable for decreased lumbar range of motion, and Dr. Brasfield's notes reflect findings of 1+ or 2+ muscle spasms from time to time and positive straight leg raising on occasion. Despite such findings, and the occasional right knee effusion, Dr. Brasfield's notes consistently find that plaintiff retains normal gait and station. Physical examinations performed in emergency rooms and during hospitalizations

have also been benign in terms of musculoskeletal complaints. Finally, as late as October 2011, Dr. Miller found that plaintiff retains 5/5 muscle strength throughout with no evidence of atrophy evidence–evidence that he has remained active physically and inconsistent with his allegations of little to no physical activities.

The ALJ also noted that plaintiff's work history further belies the severe injuries he has alleged. His earnings record establishes that he was still working as a logger as recently as 2006 and, as discussed above, ran his own lawn care business into 2010. Based on plaintiff's own report, he cut grass and used a weed eater in the course of running that business.

The ALJ also found that the severity of depression and anxiety plaintiff alleges is unsupported. There is no question that he has a significant history of mental health treatment with multiple inpatient psychiatric stays; however, there is also no question that his substance abuse and noncompliance has exacerbated the effects of the affective and anxiety disorders reflected in those records. Even so, mental status examination results as reflected in Northwest Alabama Mental Health Center records fail to show the persistent severe depression and frequent panic attacks plaintiff alleges and non-mental health examiners–including Dr. Brasfield–generally find his mood and affect to be normal when he presents for treatment. According to the ALJ, plaintiff's rapid improvement during inpatient treatment once psychotropic

medications are resumed is further evidence of the exacerbating role his noncompliance plays. Although his record might suggest severe depression at first glance, given the multiple inpatient stays and references to suicide attempts, plaintiff vehemently denied any suicidal intent. Plaintiff replied that some overdoses were accidental and has admitted to staging at least one alleged attempt to avoid being arrested.

As noted, plaintiff testified that he did not have to take pain medication, did not have seizures, and did not have as many mental problems until he sustained severe head trauma in a 2001 on-the-job accident. However, as noted above, plaintiff previously reported that he began having headaches as a teenager. His records also date his drug abuse to his teenage years and he has admitted that he was a "junkie" who abused opiates and graduated to IV oxycontin well before 1998, the earliest date he has provided for the motor vehicle accident or logging incident. His use of methadone began as part of his substance abuse treatment, but he was discharged from the treatment program due to his continued use of illicit drugs. (Ex. 1lF).

The ALJ also stated that he considered the limiting effects of plaintiff's degenerative disc disease and hypertension as well as the additional and cumulative effects of his obesity and his non-severe impairments in finding that he is limited to sedentary work activities. The effects of his bipolar disorder and anxiety disorder

were considered by limiting him to simple, non-complex tasks. The ALJ found that the evidence is not persuasive that work within these limitations would cause any significant exacerbation of plaintiff's physical or mental impairments so long as he remains compliant in taking his medications as prescribed. According to the ALJ, his allegations otherwise are not credible.

As for the opinion evidence, the ALJ stated that he accorded little evidence to Dr. Brasfield's opinions regarding diagnoses and the severity of plaintiff's pain for the lack of any objective evidence in support thereof. The ALJ accorded considerable weight to Dr. Sylvia Colon's opinions as reflected in her report of evaluation, as those opinions are supplied by her mental status examination results and are consistent with Mental Health Center records and Dr. Gragg's earlier findings on evaluation. However, little weight was accorded the medical source statement of plaintiff's ability to do work-related activities that Dr. Colon completed in conjunction with her report, given the multiple inconsistencies between her responses and her findings on evaluation set forth above. (Ex. 38F at Tr. 1064-66).

The ALJ also accorded great weight to Dr. Schachter's opinions as reflected in Mental Health Center records. Dr. Gragg based his opinion regarding plaintiff's diagnoses on a single visit. By nature, the signs of plaintiff's bipolar disorder wax and wane in intensity and, based on complete Mental Health Center records and the

other evidence of record, his completely benign presentation on the day he saw Dr. Gragg is atypical. On the other hand, despite the failure to consider the effects of plaintiff's bipolar disorder, Dr. Gragg's assessment of plaintiff's mental capabilities is consistent with Mental Health Center and primary care physician records insofar as plaintiff's overall status when he is taking medications as prescribed and attending counseling as recommended.

The ALJ accorded little weight to the opinion of Leslie Rodrigues, Ph.D., the State agency psychological consultant, that plaintiff has no severe mental impairment as it was based on an incomplete treatment record. (Ex. lOF). Mental Health Center and other records in conjunction with medical expert testimony at the hearing were persuasive that plaintiff's affective disorder and anxiety cause more than minimal limitations in his ability to perform work-related mental activities.

The ALJ accorded little weight to the opinions of plaintiff's third party informant as reflected at Exhibit 6E because the severity of limitation reflected was inconsistent with the other evidence of record. The informant reported, for example, that plaintiff must be reminded to eat, bathe and groom; that he cannot concentrate well enough to drive; and that his back severely limits his ability to perform most physical activities. However, mental status examination results from multiple examiners show that plaintiff is able to perform personal care tasks independently and

adequately and can maintain concentration sufficiently to perform simple tasks such as driving, while the x-ray, CT and MRI results and findings on physical examination noted above belie the significant physical limitations the informant describes.

In sum, the ALJ concluded that the RFC assessment was supported by objective test results, findings on examination by treating and examining providers, and plaintiff's overall presentation and history. (Tr. 11-20).

After a consideration of all the testimony and evidence submitted, the ALJ found that plaintiff has the RFC to perform sedentary level work that is unskilled and involves simple, not detailed instructions. (Tr. 17). Relying on testimony from a vocational expert (VE), the ALJ concluded that plaintiff is able to perform jobs available in the economy in significant numbers. (Tr. 21).

## II.   Plaintiff's Objections

On appeal, plaintiff challenges the ALJ's decision only with respect to his evaluation of the report of consultative examiner Dr. Sylvia Colon. (Tr. 16-17, 19, 1063-71). *See* Doc. 14, Plaintiff's Brief, at 11-15. In essence, plaintiff asserts that the ALJ disregarded Dr. Colon's rating of plaintiff as having marked impairments in understanding, remembering and carrying out detailed instructions. (Tr. 1064). She also noted that plaintiff would have marked difficulties in responding appropriately to work pressure and to changes in a routine work setting due to his bipolar disorder.

In particular, plaintiff challenges the fact that the ALJ gave little weight to Dr. Colon's medical source statement because of "multiple inconsistencies between her responses and her findings on evaluations." (Tr. 19). Plaintiff asserts that the ALJ failed to specify or discuss any of the alleged inconsistencies between Dr. Colon's responses to the disability questionnaire and her other narrative reports. (Doc. 14, Plaintiff's Brief, at 13).

### III. Discussion

In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether an opinion is amply supported, whether an opinion is consistent with the record and the doctor's specialization. *See* 20 C.F.R. §§ 404.1527(d) and 416.927(d). Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ should place on that opinion. *Id.* §§ 404.1527(d)(4) and 416.927(d)(4).

A review of Dr. Colon's report supports the findings of the ALJ. In the medical source statement regarding plaintiff's ability to do work-related activities, Dr. Colon noted that plaintiff had moderate restrictions in his ability to understand and remember short, simple instructions, carry out simple instructions and make judgments on simple work-related decisions. She further noted marked restrictions in his ability to understand and remember detailed instructions and to carry out

detailed instructions. (Tr. 1064). She also found that plaintiff had moderate difficulty in interacting with the public, supervisors and co-workers. She found that he had marked difficulties in responding to work pressures in a usual work setting and to changes in a routine work setting. (Tr. 1065). In addition, Dr. Colon noted that plaintiff could not manage benefits in his own best interests due to his difficulties with tasks and making decisions. (Tr. 1066).

In contrast, during her examination of plaintiff, Dr. Colon established that plaintiff's immediate, recent and past memories were intact. (Tr. 16, 1069). She also noted that his ability to engage in abstract thinking was intact and that his judgment and insight were good. She stated that he had good control of his symptoms with medication. (Tr. 1070). During testing, plaintiff was able to complete three-step commands with some prompting. Dr. Colon observed that plaintiff tended to exaggerate his difficulties with certain tasks. (Tr. 16, 1069-70). She stated that "[i]t is difficult to appropriately assess if he is able to handle funds. During the interview he seems to exaggerate difficulties doing specific tasks. With prompting he is able to do such tasks." (Tr. 1071). Neither Dr. Gragg nor Dr. Colon observed any evidence suggesting that plaintiff was experiencing increased anxiety at the consultative examinations despite undergoing testing by strangers in an unfamiliar setting. (Tr. 17). Dr. Colon also observed that plaintiff had a pleasant attitude, good

eye contact, normal speech, and no psychomotor retardation or agitation or tic gestures. (Tr. 1069).

The ALJ gave considerable weight to Dr. Colon's opinions reflected in her interview report. He explained that the opinions in her report are supported by her examination results and consistent with the earlier findings of consultative examiner Dr. Gragg, as well as treatment records from the Northwest Alabama Mental Health Center.

According to Dr. Gragg, plaintiff's presentation was "completely benign," and his anxiety and depression appeared to be reasonably controlled. (Tr. 19, 441-43). In addition, the examination findings in plaintiff's Mental Health Center treatment records, including those of treating psychiatrist Dr. Armand Schachter, which the ALJ gave great weight, failed to show the persistent severe depression or frequent panic attacks which plaintiff alleged. (Tr. 18-19).

Furthermore, as noted above, Dr. Brasfield generally found plaintiff's mood and affect to be normal. (Tr. 18). The ALJ explained that plaintiff's improvement was rapid during inpatient treatment because it had been caused by unintentional medication overdose. (Tr. 18-19). Consequently, substantial evidence supports the ALJ's decision to afford considerable weight to Dr. Colon's examination report while giving little weight to her medical source statement.

The ALJ was not required to adopt the limitations Dr. Colon indicated in her medical source statement. During the interview, Dr. Colon noted that plaintiff was able to complete three-step commands with prompting and had no memory deficits, and she indicated that he could "perform simple instructions and labor." In the medical source statement, she indicated that plaintiff had moderate limitations in remembering and carrying out short, simple instructions.

During her examination, Dr. Colon observed that plaintiff exhibited good insight and judgment. In the medical source statement, she found that plaintiff had moderately limited abilities to make judgments on simple work-related decisions. She also indicated in her examination that plaintiff exhibited good insight and judgment, yet in her medical source statement, she found him to be moderately limited in his ability to make judgments on simple work-related decisions.

Finally, Dr. Colon stated that plaintiff had marked limitations in responding appropriately to work pressure and changes. This conflicts with her determination that plaintiff had good control of his symptoms with medication. (Tr. 1070). The only support that she gives for any of her findings in the medical source statement was "bipolar disorder." (Tr. 1064-65).

Dr. Colon's conflicting interview findings and the medical source statement support the ALJ's decision to discount the medical source statement. *See* 20 C.F.R.

§§ 404.1527(c)(3) and (4), 416.927(c)(3) and (4). Although plaintiff is unhappy that the ALJ failed to have a medical expert evaluate Dr. Colon's report, this is not necessary where, as here, the evidence is sufficient to support the ALJ's determination. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

### IV. Conclusion

For the foregoing reasons, substantial evidence supports the ALJ's determination that plaintiff is not disabled. This determination is in accord with applicable law. Therefore, the decision of the Administrative Law Judge is due to be affirmed. A separate order will be entered.

DONE this 11th day of December, 2014.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE